UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPIRO SPYROPOULOS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHARLIE BAKER, in his capacity as ) <br> the Chief Executive Officer of the Commonwealth ) <br> of Massachusetts; KAREN E. SPILKA, in her ) <br> capacity as President of the Senate of Massachusetts ) <br> General Court; ROBERT A. DeLEO, in his capacity ) <br> As Speaker of the House of Representatives of the ) <br> Massachusetts General Court; MELANIE C. ) <br> ERESIAN, NORSCIT INVESTMENTS, LLC, ) <br> ARA ERESIAN, JR., and RY-CO ) <br> INTERNATIONAL, LTD., ) <br> ) <br> Defendants. ) <br> _____) | CIVIL ACTION <br> NO. 4:20-40025-DHH |

**Report and Recommendation**

**January 20, 2021**

Hennessy, M.J.

This matter is before the Court on the motion of Defendants Governor Charlie Baker, President of the Senate Karen E. Spilka, and (former) House Speaker Robert DeLeo, all in their official capacities (collectively the "Commonwealth Defendants") pursuant to 28 U.S.C. § 1447(c) to remand this action to the Massachusetts Land Court ("Land Court"). [Dkt. No. 6]. On October 28, 2020, Defendant Ara Eresian, Jr. ("Eresian") filed an opposition. [Dkt. No. 24]. The Court heard oral argument on discrete issues on January 15, 2021. This matter is now ripe for

1

adjudication. For the reasons that follow, I recommend the motion for remand to the Land Court be GRANTED.

I. BACKGROUND

This matter concerns a discharged mortgage on a home at 57 Westwood Road, Shrewsbury, Massachusetts ("the Property"). On August 31, 1960, Aharon and Marion Aharonian ("the Aharonians") purchased the Property by quitclaim deed. [Am. Compl. ¶ 15; Ex. 1].[1] On July 27, 2012, the Aharonians executed a Mortgage Note promising to pay Spiro Spyropoulos $35,500.00 plus interest on or before November 1, 2012. [Am. Compl. ¶ 17; Ex. 2]. RY-CO International, Ltd. ("RY-CO") guaranteed that Note. [Am. Compl. ¶ 20; Ex. 3]. Ara Eresian Jr. is the named Officer, Director, and Registered Agent for RY-CO. [Am. Compl., Ex. 3]. To secure the $35,500 loan, the Aharonians granted Spyropoulos a mortgage on the Property. [Am. Compl. ¶ 22; Ex. 4]. The mortgage deed recited a 90-day maturity date of October 27, 2012. [Am. Compl., Ex. 4]. By operation of the Obsolete Mortgage Statute, the mortgage became unenforceable on October 27, 2017. Mass. Gen. Laws ch. 260 § 33. Spyropoulos alleges he was unable to take appropriate steps to prevent the discharge of the mortgage within the allotted period. [Am. Compl. ¶ 49]. Thus, on October 27, 2017, Spyropoulos' mortgage was discharged. [Am. Compl. ¶ 50].

The Aharonians both passed away in 2017, leaving the Property to a sole heir, Melanie Eresian ("Melanie"). [Am. Compl. ¶¶ 28–30, 32]. On December 18, 2017, Melanie was appointed Executrix of Aharon's estate. [Am. Compl. ¶ 31]. On September 17, 2019, Melanie executed a note promising to pay Norscit Investments, LLC ("Norscit") $100,750, and secured the note with a mortgage on the Property which was recorded. [Am. Compl. ¶ 39; Ex. 6, Ex. 7].

---

[1] The Amended Complaint was attached to Defendant Eresian's Notice of Removal. [Dkt. No. 2, Ex. 1].

2

On August 19, 2019, Spyropoulos sued the Commonwealth of Massachusetts in the Massachusetts Land Court seeking a declaratory judgment that the Obsolete Mortgage Statute, (Mass. Gen. Laws ch. 260 § 33), was unconstitutional insofar as its operation denied him due process, equal protection, and a taking without just compensation under both the U.S. and Massachusetts constitutions, and seeking reinstatement of the mortgage. [See Am. Compl., Counts I–VIII; Dkt. No. 7, Memo. in Support Mot. to Remand ("Memo") at 3]. On October 18, 2019, the Commonwealth moved in the Land Court to dismiss on the basis of sovereign immunity. [Memo at 3].

On December 13, 2019, Spyropoulos amended his complaint naming, in lieu of the Commonwealth itself, the Commonwealth Defendants in their official capacities,. [Am. Compl.]. Spyropoulos also named as defendants Norscit, RY-CO, Melanie, and Eresian. [Am. Compl.]. On January 17, 2020, the Commonwealth again moved to dismiss. [Memo at 3]. On February 14, 2020, Eresian was served in this action. [See Dkt. No. 2, Ex. 1 at 97–98]. On March 9, 2020, before the Land Court could hear the motion to dismiss, Eresian removed this action to federal court, invoking federal question jurisdiction. [Dkt. No. 2].

II.   MOTION FOR REMAND

The Commonwealth Defendants move for remand on essentially four grounds: (1) that Eresian removed to federal court without the required unanimous consent of the defendants; (2) that the Eleventh Amendment bars suit against the Commonwealth Defendants; (3) that the Land Court did not have jurisdiction over the declaratory judgment action and hence that the court to which the action is removed is without jurisdiction;[2] and (4) that remand serves the interests of judicial economy. I address arguments 1, 2 and 4 in order.

---

[2] At oral argument on January 15, 2021, the Commonwealth Defendants withdrew this derivative jurisdiction argument. Accordingly, I do not address the argument's merits or Eresian's opposition.

    A.  <u>Rule of Unanimity</u>

The Commonwealth Defendants argue that remand is appropriate because Eresian failed to obtain the necessary unanimous consent of the defendants. I agree.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The original jurisdiction of a district court extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If a civil action includes both claims arising under the district court's original jurisdiction and state-law claims, then a district court may exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367. Such a case, containing both federal-law and state-law claims, may be removed pursuant to 28 U.S.C. § 1441(c); <u>see also</u> <u>McDermet v. Heath</u>, No. 17-CV-12327, 2018 WL 283889, at *1 (D. Mass. Jan. 3, 2018); <u>Ramos v. Silva</u>, No. 16-CV-10083, 2016 WL 1452349 at *2 (D. Mass. Apr. 13, 2016). In an action removed under Section 1441(a), all defendants "properly joined and served must join in or consent to the removal." 28 U.S.C. § 1446(b)(2)(A). In a civil action including claims within the original and supplemental jurisdiction of the district court, only defendants against whom claims within the court's original jurisdiction are required to join in or consent to removal. 28 U.S.C. §1441(c)(2). Removal statutes are strictly construed, and the removing party bears the burden of showing the federal court's jurisdiction. <u>Danca v. Private Health Care Sys.</u>, 185 F.3d 1, 4 (1st Cir. 1999); <u>Therrien v. Hamilton</u>, 881 F. Supp. 76, 78 (D. Mass. 1995). "[A]ny doubts about the propriety of removal should be resolved against the removal of an action." <u>Montana v. Abbot Labs.</u>, 266 F. Supp. 2d 250, 254 (D. Mass. 2003).

Here, the Notice of Removal cites §§ 1331 (original jurisdiction), 1441(c)(1)(A) [and] (B) (removal of actions including federal-law and state-law claims), and expressly invokes federal question jurisdiction as the predicate for removal. [Dkt. No. 2]. No matter how I interpret the Notice of Removal—whether it invokes federal question jurisdiction only or both federal question jurisdiction and supplemental jurisdiction—the removal statutes required Eresian to obtain the consent of any defendant against whom a federal claim was asserted. A review of the amended complaint shows that federal claims are asserted against the Commonwealth and its representatives. For instance, Count VI, which alleges a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, claims "the Commonwealth caused Spyropoulos to lose his legal title to the Subject Property" by operation of the Obsolete Mortgage Statute. [Am. Compl. ¶ 64]. Moreover, throughout, Spyropoulos alleges that the Commonwealth's Obsolete Mortgage Statute is unconstitutional.

Eresian does not dispute that he did not obtain the consent of the Commonwealth Defendants to removal. Instead, he makes what appear to be three objections to the argument of the Commonwealth Defendants for remand. First, as I understand it, he contends that consent was not required because consent is required only for matters removed pursuant to § 1441(a), and his Notice of Removal also cites, as noted, § 1441(c)(1)(A) and (B). [Dkt. No. 24 at 8–9]. This contention overlooks the requirement of § 1441(c)(2), that all defendants against whom original jurisdiction claims are asserted must consent to removal.

Second, he challenges the Commonwealth Defendant's reliance on Abbot Labs, because it was decided before the 2011 amendment to § 1441, codifying the rule of unanimity. [Memo at 4 n.1]. While Eresian has the timeline correct, his argument misses the mark. In Abbot Labs, Minnesota, Montana, and Nevada sued several pharmaceutical companies, alleging fraudulent

misrepresentation of drug prices. 266 F. Supp. 2d at 252. The defendants removed the action to federal court. Id. With respect to Nevada, the District Court remanded because of "defendants' failure to consent unanimously to removal." Id. at 260, 263. The court's decision is consistent with the subsequent amendment to § 1441. Indeed, Abbot Labs remains good law.

Lastly, Eresian points to the Commonwealth Defendants' remark that for purposes of the Eleventh Amendment immunity, they are "nominal." Citing to Wright & Moore, Eresian argues their consent was not required because "nominal or formal parties should be disregarded for purposes of the unanimity rule, so that the failure of an improperly joined party to participate in the notice will not defeat removal." Wright & Miller, Federal Practice & Procedure § 3730 (Rev. 4th ed. 2008). A party immune under the Eleventh Amendment does not need to consent to removal. Santiago v. Keyes, 839 F. Supp. 2d 421, 424 (D. Mass. 2012); Rey v. Classic Cars, 762 F. Supp. 421, 423 (D. Mass. 1991) ("[T]he failure of the Commonwealth of Massachusetts to consent to removal does not require that the case be remanded given that the eleventh amendment prohibits a suit against the Commonwealth in a federal court absent the Commonwealth's consent."). Despite this favorable case law, Eresian fails to prove that the Commonwealth Defendants are nominal.

Syropoulos seeks a declaratory judgment to have the Obsolete Mortgage Statute declared unconstitutional.[3] To vindicate his rights, Spyropoulos could not recover from Eresian, or any of the other private parties who are named defendants in this case. Indeed, as the Commonwealth Defendants noted at the hearing on this motion, when a plaintiff seeks a declaratory judgment that

---

[3] Spyropoulos claims the Commonwealth Defendants violated his rights under three clauses of the U.S. Constitution: first, the Due Process Clause of the Fourteenth Amendment; second the Equal Protection Clause of the Fourteenth Amendment; and third, the Takings Clause of the Fifth Amendment, applied to the states through the Fourteenth Amendment. [Am. Compl., Counts II, III, VI, VIII]; U.S. Const. amends. V, XIV; Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005) (noting that the Takings Clause applies to the states through the Fourteenth Amendment).

a statute is unconstitutional, the plaintiff must sue a defendant who exercised state action. In Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto, the First Circuit observed that a claim against a private party to declare a state statute unconstitutional fails if that party has not participated in state action. 522 F.3d 1, 4 (1st Cir. 2008) ("Even if a statute is unconstitutional, private actions taken pursuant to such a statute may remain private"); see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (noting that only state action, not private conduct, is subject to equal protection scrutiny under the Fourteenth Amendment); Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005) ("[T]he purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other."); Maine Educ. Ass'n Benefits Tr. v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012) (noting that the Takings Clause applied to government takings of private property without just compensation).

Because Spyropoulos seeks to have a state law declared unconstitutional, Eresian and the other private defendants cannot provide him with relief in this case, and the Commonwealth Defendants cannot be "nominal" for the purposes of consent to removal. See Acosta Oliveras v. Pittsburgh Corning Corp., 36 F. Supp. 2d 443, 444 (D.P.R. 1999) ("A defendant is nominal if there is no reasonable basis for predicting that it will be held liable."); see also Hood v. City of Boston, 891 F. Supp. 51, 54 (D. Mass. 1995) ("[I]t is … a court's responsibility in considering either the propriety of removal or the propriety of remand to look … to the nature of the claims as they appear on the fact of the complaint.").

The case of Zarr v. Luce, No. 13-CV-1441, 2013 WL 3581909 (M.D. Fla. July 11, 2013) is instructive. Zarr brought a § 1983 action against, and served, Sheriff Gualtieri and State Attorney McCabe. Zarr, 2013 WL 3581909 at * 1. Gualtieri removed the action to federal court, but

7

McCabe himself failed to consent or join the removal motion. Id. In opposing Zarr's motion to remand, Gualtieri argued that McCabe was a nominal defendant, protected by prosecutorial and Eleventh Amendment Immunity, whose consent was not required. Id. at *2. The Court noted:

> Gualtieri argues that McCabe is a nominal defendant because Zarr's complaint fails to state a viable cause of action against McCabe based on the Eleventh Amendment and prosecutorial immunity. Although Zarr's complaint [would] likely fail[,] . . . the issue that must be decided on a motion to remand is whether McCabe is a nominal or formal defendant. McCabe clearly has a stake in the outcome of this case, even if he has a valid defense to suit, and it cannot be said that his interest is merely incidental compared to the real party in interest.

Id. at *3. Here, much like Zarr, Eresian cannot dismiss the interest of the Commonwealth Defendants as "merely incidental" where Spyropoulos seeks to have a Massachusetts law declared unconstitutional. See Libby v. Marshall, 833 F.2d 402, 405 (1st Cir. 1987) (finding the state is the "real party in interest" where the defendants were sued in their official capacities and "[i]njunctive relief is sought that would require them to exercise their official powers in certain ways.").

As discussed in Part B below, in naming the Commonwealth Defendants, it appears that Spyropoulos has failed to sue the appropriate state officer. However, there is no question that his cause of action requires some state official as a defendant for his recovery. For this reason, and in reliance on the underlying principle that any doubt about the propriety of removal must be resolved against Eresian, Abbot Labs., 266 F. Supp. 2d at 254, I find that Eresian was required to obtain the consent of the Commonwealth Defendants on behalf of the Commonwealth.

### B. Eleventh Amendment Immunity

Even if Eresian did not need the consent of the Commonwealth Defendant to remove the case, this Court must remand the case because the Commonwealth Defendants are immune from suit in federal court. The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars a federal court from hearing "a suit brought by a citizen against his own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). "[T]here is ample authority for the proposition that an Eleventh Amendment bar to the maintenance of an action or a claim is precisely the type of shortfall that requires remanding a removed case to the state court." Hudson Sav. Bank v. Austin, 479 F.3d 102, 109 (1st Cir. 2007).

A notable exception to sovereign immunity, relied on by Eresian, is the Ex Parte Young doctrine. Ex Parte Young, 209 U.S. 123, 155–56 (1908). Ex Parte Young provides an "effective mechanism . . . for testing, in the federal courts, the constitutionality of the state statutes under which [state governments] act." Wright & Miller, Federal Practice & Procedure § 3524.3 (3d ed. 1999). In pertinent part, Ex Parte Young states:

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

209 U.S. 123, 155–56 (1908). Accordingly, a State official is not immune from suit when "an unconstitutional legislative enactment is 'void,'" and a plaintiff seeks to enjoin enforcement. Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254 (2011) (quoting Ex Parte Young, 209 U.S. at 159–160). However, it is equally settled that a state official can only be enjoined if that official enforces the allegedly unconstitutional statute. Doe v. U.S. Att'y Gen., 657 F. Supp. 2d 315, 319–20 (D. Mass. 2009). Essentially, "[i]n a suit brought to have a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute an officer of a state is an appropriate defendant if he has some connection with the enforcement of the act." Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979).

Here, defendants Spilka and DeLeo cannot be held liable because (1) they are entitled to legislative immunity, and (2) they could not enforce the Obsolete Mortgage Statute. "Absolute legislative immunity attaches to all actions taken in the sphere of legislative activity." Tolman v. Finneran, 171 F. Supp. 2d 31, 35 (D. Mass. 2001) (quoting Bogan v. Scott–Harris, 523 U.S. 44, 54 (1998)). Spyropoulos alleges that the Speaker and the Presidents of the Senate are liable for enacting law he argues is unconstitutional. [Am. Compl. ¶¶ 9–14]. However, their participation in enacting law clearly falls within the scope of "legislative activity." Therefore, both defendants have absolute immunity from suit, even if the law is unconstitutional. See Tolman, 171 F. Supp. 2d at 35. Further, defendants Spilka and DeLeo are affirmatively prohibited from enforcing the statute, as it would be a violation of the separation of powers doctrine. See Mass. Const. Pt. 1, art. XXX ("In the government of this commonwealth, the legislative department shall never exercise the executive . . . powers."). As such, Eleventh Amendment immunity protects defendants Spilka and DeLeo.

Similarly, Defendant Baker maintains sovereign immunity in this Court because there is no evidence that the Governor was directly involved in enforcing the Obsolete Mortgage Statute. "[A] state official's broad powers to enforce the laws of a state are insufficient to bring the official into federal court." Doe, 657 F. Supp. at 319. The Eleventh Amendment bars recovery in federal court "absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests." Id. (quoting Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir.1992)). For a plaintiff to recover under Ex Parte Young, "there must be a connection between the official sued and enforcement of the allegedly unconstitutional statute." Long, 961 F.2d at 152; see also Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 158 (D. Mass. 2011) (noting that a state official is an appropriate defendant under Ex Parte Young when they have some connection with the

enforcement of the statute). Eresian fails to show that the Governor has a connection to enforcing Mass. Gen. Laws ch. 260 §33.

Thus, Ex Parte Young does not apply to this claim, and Spyropoulos is barred from recovery in federal court. For this separate reason, I recommend remand.

### C. Discretion to Remand

Finally, the Commonwealth Defendants argue that even if remand was not required under either of the foregoing separate points, the Court should exercise its discretion to decline jurisdiction and remand this case. I agree.

If not remanded, in its present posture the case would proceed in this court under the Declaratory Judgment Act, 28 U.S.C. §2201 (the "Act").[4] On its face, the Act provides that a court "may declare the rights and other legal relations of any other interested party seeking such a declaration." 28 U.S.C. 2201(a) (emphasis supplied). As the plain language suggests, the Act "confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (citations omitted). Thus, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." Wilton 515 U.S. at 288. Factors which guide an exercise of discretion to hear a declaratory judgment action include:

> (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding "uneconomical" proceedings, "vexatious" proceedings, and "gratuitous interference" by a federal court with an

---

[4] To the extent the Commonwealth Defendants separately suggest that this Court does not have jurisdiction to hear this case under the Massachusetts Declaratory Judgment Act, Mass. Gen. Laws ch. 231A, [Memo at 7–8], that argument fails because a federal court may decide a claim for declaratory relief under the Federal Declaratory Judgment Act. See 28 U.S.C. § 2201; Tocci Bldg. Corp. of New Jersey v. Virginia Sur. Co., 750 F. Supp. 2d 316, 320 n. 2 (D. Mass. 2010) ("A declaratory judgment action is procedural only.").

> orderly and comprehensive suit pending in a state court, presenting the same issues, not governed by federal law, between the same parties.

Travelers Cas. & Sur. Co. v. Bos. Gas Co., 76 F. Supp. 2d 59, 62 (D. Mass. 1999) (citing Wilton, 515 U.S. at 282–83). Here, these factors counsel in favor of remand to the Land Court. First, though there is no pending state court case, the claims in the former state court proceeding were, and on remand would be, identical to the claims in federal court. Second, the claims of the parties can be adjudicated in state court. The State Court has the authority and ability to decide the claims under both the Massachusetts and U.S. Constitutions. See City of Chicopee v. Sullivan, 379 F. Supp. 569, 572–73 (D. Mass. 1974) (noting that a federal court should decline to hear a case "when the state court has jurisdiction to adjudicate all the issues in the case while the federal court can adjudicate only the issue of the constitutionality of the state statute."). Hence, there is an economy of resources for both the courts and the parties for Spyropoulos to prosecute his claims in the courts of the Commonwealth. Third, whether the necessary parties have been joined is a non-factor; if Spyropoulos has failed to name the appropriate state officer (as I have suggested above), that defect exists in both federal and state court. Fourth, such state officer would be amenable to process in state court. Further, the plaintiff and a number of defendants have shown a preference for deciding this case in state court, as Spyropoulos initiated this suit in the Land Court and the Commonwealth Defendants have moved to remand. Lastly, remand has the advantage of allowing a Massachusetts court to determine whether one of its own laws passes constitutional muster, and thus serves the interests of comity. See Hood, 891 F. Supp. at 55. These considerations show that this controversy can be better resolved in a remanded proceeding in state court. For these reasons, I recommend the case be remanded to the Land Court.

III. CONCLUSION

For the foregoing reasons, I recommend this case be REMANDED to the Land Court.[5]

    /s/David H. Hennessy
David H. Hennessy
U.S. Magistrate Judge

---

[5] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).